FILED
2023 Jun-02 PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **SONIA MICHAEL,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:22-CV-00102-RDP |
| } | |
| **KILOLO KIJAKAZI,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Sonia Michael brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("the Commissioner") denying her claim for disability and disability insurance benefits ("DIB"). *See also* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed for benefits under Title II of the Act on February 4, 2020, with an alleged onset date of disability of January 15, 2020. (R. 19, 41, 161). Plaintiff's application was denied. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (R. 19). Her request was granted and on April 15, 2021, Plaintiff received a telephone hearing before ALJ Clarence Guthrie. (R. 19, 34). Present at the hearing were Plaintiff, Plaintiff's counsel, and Stephanie Wade-May, a vocational expert ("VE"). (R. 48).

At the time of the hearing, Plaintiff was fifty-two years old and had acquired a GED, but had no college or vocational training. (R. 28, 39, 161). Plaintiff had previously worked as a nurse's

aide. (R. 200). Plaintiff suffers from obesity, degenerative disc disease of the cervical and lumbar spine, and plantar fasciitis. (R. 21). According to Plaintiff, due to these impairments she has been unable to engage in substantial gainful activity since January 15, 2020, and would miss work two to three days per pay period in the year leading up to her alleged onset of disability. (R. 46, 161).

Plaintiff lives in a house with her daughter and son-in-law. (R. 43). Her daughter assists by doing the grocery shopping and completing basic household chores. (R. 43, 45). Although Plaintiff is medically cleared to drive, she chooses not to do so because of neck pain when she turns her head. (R. 40). Plaintiff testified that she tries to assist with sweeping but can only stand and perform light chores for 10 minutes before experiencing and needing to sit down and rest. (R. 43-44). Plaintiff complains that pain in her neck and legs also prevent her from standing for long periods of time. (R. 44). She has stated the pain requires her to rest for forty-five minutes to an hour. (R. 44). Plaintiff also experiences discomfort in her lower back and neck when in a seated position, causing her to adjust her position frequently and spend most of her time in a reclined position. (R. 45). During a nine-hour period -- between 8:00 a.m. to 5:00 p.m. -- Plaintiff alleges she spends four to five hours in a reclined position due to alleged pain. (R. 44). When asked during the hearing if there were "any other problems you're having now [that] you think [are] keeping you from working that you haven't told us about or we haven't asked you about," Plaintiff responded, "No, sir." (R. 45, 46). Plaintiff is insured and she takes muscle relaxers, pain medication, and depression medication. (R. 44).

At the time of the hearing, Plaintiff was three days out from a cervical revision of hardware and fusion, a procedure to reverse the cervical decompression and fusion performed January 29, 2020. (R. 437). The original procedure was performed after Plaintiff presented to The Orthopedic Center on January 9, 2020 with reports of chronic neck pain that had exacerbated within the

previous two to three weeks. (R. 293). Under the care of Dr. Morris Seymour, Plaintiff underwent an X-ray of the cervical spine that revealed arthritic change at C4-5, 5-6, and 6-7. (R. 294). Beyond mild weakness in the triceps, the remaining areas appeared normal. (R. 291). A magnetic resonance imaging ("MRI") scan indicated some degenerative changes at the C4-5 and C5-6 levels with some mild bulging noted. (R. 290). A focal disc herniation was noted on the right at C6-7. (*Id.*). Plaintiff was referred to Dr. Steven L. Bayer for the cervical decompression and fusion on January 29, 2020. (R. 296). It was after the first procedure that Plaintiff filed an application for disability benefits, alleging disability arising from degenerative disc disease, depression, and neuropathy. (R. 199).

At Plaintiff's post-operative appointment on March 10, 2020, it was noted that she was recovering "really well" and reported not having many issues other than some mild pain in the evening. (R. 394). During a return visit on June 18, 2020, Plaintiff reported more problems in her lower back with pain radiating down her left leg and numbness in her right foot. (R. 392). Despite her pain, Plaintiff demonstrated a normal range of motion in her lumbar spine and lower extremities. (R. 390). An MRI was performed on June 19, 2020 and indicated mild spondylosis, including mild canal stenosis at the L2-3 level. (R. 400). After reviewing Plaintiff's MRI on June 25, 2020, Dr. Seymour recommended facet injections at L4-5 and L5-S1 to reduce inflammation around the nerves, but noted they would not reduce pressure nor function as a curative measure. (R. 388-89). Plaintiff was given injections on July 24, 2020, after which she reported "feel[ing] wonderful" aside from "mild left-sided neck pain." (R. 422, 424).

After x-rays and a computed tomography ("CT") scan revealed nonunion of her previous cervical fusion (performed in January 2020), Dr. Seymour recommended revision surgery. (R. 422). Plaintiff proceeded with scheduling the revision surgery but canceled in November 2020

due to a very high insurance deductible. (R. 429). As an alternative to the revision surgery, Dr. Seymour recommended physical therapy and continued injections, but Plaintiff declined that treatment plan due to her high insurance deductible. (*Id.*). Plaintiff continued with continued use of pain medication and muscle relaxers and was seen by Dr. Seymour as needed. (*Id.*).

Plaintiff was seen again on March 9, 2021, and still reported experiencing significant neck pain. (R. 439). After an x-ray exhibited degenerative changes at C4-5 and C5-6 without any obvious consolidation of the previous fusion, Dr. Seymour ordered an additional CT scan. (R. 439-40). On March 23, 2021, Dr. Seymour reviewed the CT scan, diagnosed Plaintiff with pseudo-arthritis at C6-7, and again recommended surgical treatment. (R. 436). Plaintiff then elected to undergo the cervical revision of hardware and fusion which was performed on April 12, 2021. (R. 437).

Due to the recency of the procedure, at the hearing the ALJ allowed Plaintiff to provide additional medical evidence regarding the revision surgery to be considered when ruling on her case. (R. 51). Plaintiff provided a report from her post-operative appointment dated April 22, 2021, wherein Plaintiff reported to be "doing really well" overall and no regressed progress was noted. (R. 434).

State psychiatric consultant, Dr. Robert Estock, assessed Plaintiff's mental residual functional capacity ("RFC") and reviewed the records in evidence as of May 20, 2020. (R. 26, 53-63). He found that Plaintiff had a mild limitation in her ability to concentrate, persist, or maintain pace, but no limitations in the other three broad areas of mental functioning. (R. 27, 58). Additionally, he found that the evidence did not meet the C criteria of the applicable listings. (*Id.*). Upon reconsideration and review of Plaintiff's medical records on June 24, 2020, Dr. Estock again reached the same conclusion. (R. 27, 72-73).

Plaintiff's physical RFC was also assessed by State medical consultant Dr. Thomas Amason, who determined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms alleged were not substantiated by the objective medical evidence alone. (R. 27, 59-61). Dr. Amason concluded that Plaintiff could sit and stand and/or walk for a total of 6 hours in an 8-hour workday. (R. 74). Dr. Amason found Plaintiff to be able to perform work at a light level of exertion requiring no climbing of ladders, ropes, and scaffolds, and no more than occasional balancing, stooping (*i.e.*, bend at the waist), kneeling, crouching *(i.e.*, bend at the knee), crawling, and climbing of ramps and stairs. (R. 27, 59-61). On reconsideration, medical consultant Dr. Victoria Hogan reviewed Plaintiff's file on July 24, 2020, and agreed with Dr. Amason's initial assessment. (R. 27, 74-76).

At the hearing, the ALJ received testimony from the VE. In response to a hypothetical question proposed by the ALJ, the VE testified that an individual with the same age, educational level, work history, and RFC as Plaintiff would be unable to perform the duties of a nurses' aide.[1] (R. 49). The VE explained that although such a person could no longer perform Plaintiff's past work, there are jobs within the national economy that could be performed by this hypothetical individual such as a router, order caller, and ticket taker. (*Id.*). However, if medical conditions and pain were to cause the person to miss work four days per month or be off task twenty percent or more per workday, all jobs would be eliminated. (*Id.*).

In a decision dated June 2, 2021, the ALJ determined Plaintiff was capable of performing jobs existing in the national economy and therefore not disabled under sections 216(i) and 223(d) of the Act. (R. 29). After the Appeals Council denied Plaintiff's request for review of the ALJ's

---

[1] In the *Dictionary of Occupational Titles*, DOT # 355.674-014 is a nurse's aide. This position is consistent with medium work.

decision, that decision became final and a proper subject of this court's appellate review. (R. 1). 42 U.S.C. § 405(g).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id.* §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not

disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id.* § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff meets the insured requirements through December 31, 2023. (R. 21). Next, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since January 15, 2020, her alleged onset date. (*Id.*). The ALJ identified Plaintiff as having the following severe impairments: obesity, degenerative disc disease of the cervical and lumbar spine, and plantar fasciitis. (R. 22). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526, and had an RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with limitations.[2] (R. 23). Based on the testimony of the VE, the ALJ found that although Plaintiff was incapable of performing her past relevant work, she was capable of performing jobs existing in the national economy. (R. 27, 28). Thus, the ALJ concluded that Plaintiff is not disabled as defined by the Act. (R. 29).

**III.   Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision reversed and remanded for further consideration. (Doc. #13 at 14). Plaintiff argues that the ALJ misapplied the Eleventh Circuit pain standard and

---

[2] The ALJ determined that Plaintiff could frequently reach and push or pull bilaterally, occasionally stoop, kneel, crouch, or crawl, but could never climb ladders, ropes, scaffolds, nor be exposed to workplace hazards such as moving mechanical parts and high, exposed places. (R. 23).

discredited her allegation of debilitating pain and limitations based on an erroneous and selective reading of the medical records. (Doc. # 13 at 5, 10). Plaintiff also alleges that the ALJ did not properly consider the record as a whole and that the ALJ's decision is not supported by substantial evidence. (Doc. # 13 at 10).

## IV.     Standard of Review

The only issue before this court is whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

After careful review, and for the following reasons, the court concludes that the ALJ's decision is due to be affirmed.

**A.     Substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints.**

Plaintiff contends that the ALJ misapplied the Eleventh Circuit standard for evaluating disability due to pain. (Doc. # 13 at 5-13). Specifically, Plaintiff argues that the ALJ erred in disregarding her testimony regarding the disabling nature of her pain and failed to consider the record as a whole. (Doc. # 13 at 10).

In evaluating a claimant's application for disability, the ALJ is charged with a duty to weigh the evidence, resolve material conflicts in testimony, and determine the case based upon the record evidence. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). A claimant's allegation of pain or other symptoms does not alone establish disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1508. When a claimant seeks to establish disability based on subjective complaints of pain, the ALJ must evaluate those complaints using a two-step process. *See* 20 C.F.R. §§ 404.1529, 416.929; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)[3].

The ALJ must first determine whether the claimant suffers from an underlying medical condition that could reasonably be expected to produce the claimant's pain or other symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929; *Wilson*, 284 F.3d at 1225-26. If such an underlying impairment has been shown, the ALJ must evaluate the intensity and persistence of the claimant's

---

[3] Similar to the Commissioner's regulations at 20 C.F.R. § 404.1529, the Eleventh Circuit pain standard requires a finding that there is: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002). The Eleventh Circuit has recognized that the Commissioner's regulations at 20 C.F.R. § 404.1529 are consistent with the Eleventh Circuit's pain standard, and the ALJ need not directly reference the standard verbatim as long as it is utilized in application. *Id.*

pain or other symptoms to determine the extent to which they affect the claimant's ability to perform work activities. *Id.* When statements about the intensity, persistence, or limiting effects of pain or other symptoms are not corroborated by objective medical evidence, the ALJ must evaluate the credibility of those statements in light of the entire record. *Id.* If the ALJ finds that the claimant's subjective allegations are not credible, he must give "explicit and adequate reasons" for that finding. *Id.* at 1225. Where an ALJ goes beyond merely stating that the individual's statements about the pain and other symptoms are inconsistent with the record and clearly articulates the reasoning as supported by substantial evidence, the decision will not be disturbed by a reviewing court. *Foote*, 67 F.3d at 1561-62.

Here, the ALJ acknowledged Plaintiff's complaints of pain and that she could not work due to her symptoms. But after review of the record, the ALJ found that Plaintiff's subjective allegations were not entirely consistent with the record and medical evidence. (R. 23-27). Plaintiff contends that the ALJ erroneously discredited her pain testimony based on a selective reading of her medical records. (Doc. # 13 at 10).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some work-related limitations, but her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence in the record. (R. 24). Her neck pain was present for several years prior to her alleged onset date, and when the pain intensified it was treated with cervical fusion surgery. (R. 24, 293). Immediately following this surgery, Plaintiff began experiencing only mild neck pain. (R. 24, 394). And, even when her pain transformed into low back pain, which radiated down her leg precipitating the need for additional medical treatment, Plaintiff continued to demonstrate a normal range of motion in her lumbar spine and lower extremities, and had no motor, sensory, or reflex

10

pain or other symptoms to determine the extent to which they affect the claimant's ability to perform work activities. *Id.* When statements about the intensity, persistence, or limiting effects of pain or other symptoms are not corroborated by objective medical evidence, the ALJ must evaluate the credibility of those statements in light of the entire record. *Id.* If the ALJ finds that the claimant's subjective allegations are not credible, he must give "explicit and adequate reasons" for that finding. *Id.* at 1225. Where an ALJ goes beyond merely stating that the individual's statements about the pain and other symptoms are inconsistent with the record and clearly articulates the reasoning as supported by substantial evidence, the decision will not be disturbed by a reviewing court. *Foote*, 67 F.3d at 1561-62.

Here, the ALJ acknowledged Plaintiff's complaints of pain and that she could not work due to her symptoms. But after review of the record, the ALJ found that Plaintiff's subjective allegations were not entirely consistent with the record and medical evidence. (R. 23-27). Plaintiff contends that the ALJ erroneously discredited her pain testimony based on a selective reading of her medical records. (Doc. # 13 at 10).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some work-related limitations, but her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence in the record. (R. 24). Her neck pain was present for several years prior to her alleged onset date, and when the pain intensified it was treated with cervical fusion surgery. (R. 24, 293). Immediately following this surgery, Plaintiff began experiencing only mild neck pain. (R. 24, 394). And, even when her pain transformed into low back pain, which radiated down her leg precipitating the need for additional medical treatment, Plaintiff continued to demonstrate a normal range of motion in her lumbar spine and lower extremities, and had no motor, sensory, or reflex

deficits. (R. 25, 390). Plaintiff's reported foot pain as a result of plantar fasciitis resulted in no edema and she maintained grossly normal motor strength. (R. 25, 316-17). Thus, the objective medical evidence indicates that Plaintiff's functional capacity was minimally impacted by her medical impairments.

The ALJ considered Plaintiff's medical evidence, clearly articulated his findings, and took the evidence into account (along with the medical opinions and prior administrative findings in the record) in making his decision.[4] (R. 26-27). The ALJ found the administrative medical findings to be mostly persuasive and consistent with the additional medical records in evidence at the time of review. (R. 26). Nevertheless, he further restricted Plaintiff to frequent use of her bilateral upper extremities for pushing, pulling, and reaching based on the non-union of her cervical fusion and subsequent revision surgery. (R. 26-27). The ALJ considered the record as a whole in addition to the third-party administrative findings to determine it necessary to limit Plaintiff's RFC beyond that which the state medical consultants recommended.

The non-union of Plaintiff's cervical fusion and subsequent revision surgery was performed after the State medical consultants had provided their opinions, so information about that surgery was not available to them on the initial determination or reconsideration. (R. 26-27). However, with access to the entire record and evidence of Plaintiff's recent procedure, the ALJ was well within his authority in making the final determination of Plaintiff's RFC. *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013). Based on the evidence available within the record, the ALJ found Plaintiff to be limited to lifting and carrying up to 10 pounds frequently and 20 pounds occasionally; frequent use of her bilateral upper extremities for pushing,

---

[4] The ALJ evaluated supportability, consistency, relationship with Plaintiff, specialization, and additional factors to determine persuasiveness of the administrative medical findings, in accordance with 20 C.F.R. § 404.1520(c) and 416.920(c).

pulling, and reaching; occasional pushing/pulling with her bilateral lower extremities due to her history of plantar fasciitis; and occasional stooping, kneeling, crouching, or crawling. (R. 26). This recommendation was considered along with Plaintiff's classification as obese (with a BMI of 32.59), but did not indicate any restriction other than the range of light work previously described. (R. 26, 318).

Plaintiff additionally claims that the ALJ made a determination of her RFC by cherry-picking evidence in her medical records to support the determination. (Doc. # 13 at 10). Specifically, Plaintiff alleges that the ALJ ignored the weight of the medical evidence and instead based his ruling on the fact that the pain she experienced following her recent surgery would subside with time. (Doc. # 13 at 10). The court disagrees.

The court acknowledges that at the time of the hearing, on April 15, 2021, Plaintiff was only three days out from her corrective surgery and she reported being in pain at the hearing. The ALJ gave her the opportunity to submit additional evidence to support her testimony relating to her pain. (R. 51). The ALJ expressly made clear that any follow-up medical records submitted after the date of the administrative hearing would be considered in ruling on Plaintiff's claim. (R. 51). Plaintiff submitted the record of her post-operative appointment with Dr. Seymour on April 22, 2021. During the post-operative appointment, Plaintiff was reported to be doing "really well" with only mild right-sided pain and no evidence of symptom amplification. (R. 434). The ALJ reviewed this evidence but nevertheless determined there was no indication that Plaintiff's symptoms would become aggravated outside of experiencing normal post-operative pain. (R. 26). Thus, the ALJ concluded Plaintiff's testimony of her subjective pain is not entirely consistent with the medical evidence in the record.

The task before this court is not to decide facts anew, reweigh evidence, or substitute judgment for that of the ALJ. *Mitchell v. Comm'r of Soc. Sec*, 771 F.3d 780, 782 (11th Cir. 2014). Instead, the question is whether the ALJ has met the burden for evidentiary sufficiency. *Biestek v. Acting Comm'r of Soc. Sec*, 139 S. Ct. 1148, 1157 (2019). Here, the ALJ adequately explained his reasoning for finding Plaintiff's testimony and subjective complaints of pain not fully credible, and substantial evidence in the record supports that finding.

### VI.     Conclusion

For all these reasons, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 2, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE